******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

D'AURIA, J., with whom McDONALD, J., joins, concurring in part and dissenting in part. I agree with the majority that the trial court abused its discretion by instructing the jury on consciousness of guilt. I disagree with part III of the majority opinion, however, insofar as it suggests that either the limiting principles of our supervisory authority over the administration of justice or the doctrine of stare decisis should prevent us from discontinuing use of the consciousness of guilt instruction. Further, I question the majority's decision to perpetuate the continued validity of the consciousness of guilt instruction. I would either abolish the instruction altogether or limit its use to cases in which it is requested by the defense or the defense does not object to the state's request that the instruction be given, and the trial court provides a balanced and neutral instruction that recites both parties' characterization of the evidence at issue. Finally, I believe this case presents a closer call on the issue of harm than the majority suggests, and, ultimately, I do not have a fair assurance that the trial court's error did not substantially affect the jury's verdict.

I

The defendant, Yong Sik Kim, asks this court to find that the consciousness of guilt instruction given in this case was erroneous and harmful and to overturn his conviction. The defendant and the amici also ask us to eliminate the consciousness of guilt instruction in its totality; that is, direct that trial courts no longer provide the instruction, and leave it to counsel's arguments and jurors' own logic and experience to determine what, if any, inferences to draw from the evidence of a defendant's supposed guilty conscience. The majority, concluding that the instruction was harmless in the present case, finds no injustice requiring a remedy but accepts the defendant's invitation to revisit the utility of the instruction—in part. Rather than do away with the instruction altogether, however, the majority restricts trial courts' discretion to provide the instruction—discretion we all

agree the trial court abused in the present case. See part II of this opinion. Under the majority's new framework, the trial court should provide a consciousness of guilt instruction only if a tailored instruction will aid the jury beyond counsel's arguments and the court's general instructions on witness credibility and circumstantial evidence such that the need for the instruction outweighs the potential risks it poses and, either **(1)** the state can explain why the instruction is necessary or **(2)** the defense either requests the instruction or does not object.

I do not agree with the majority's reluctance to embrace the position of both parties and the amici that the consciousness of guilt instruction is no longer necessary. At oral argument before this court, counsel for the state admitted that the instruction is not "critical" or required for jurors to capably assess the evidence at issue. Meanwhile, both the defendant and the amici have declined to take the position that the instruction should be maintained, even at the request of the accused in a particular case. Nor have I heard a persuasive argument for maintaining the instruction. I agree with the defendant that the wisest course is to do away with the instruction entirely. In particular, I disagree with part III of the majority opinion to the extent it suggests that the principles that moderate the use of our supervisory authority or animate the doctrine of stare decisis weigh against eliminating the consciousness of guilt instruction entirely any more than they weigh against nearly eliminating the instruction and constructing a new rubric for trial courts to follow in deciding when to employ it, as the majority does today.

A

First, the majority unnecessarily applies the standard that governs the exercise of our supervisory authority to overturn a defendant's conviction—an extraordinary remedy subject to justifiably demanding scrutiny—when the standard that governs the exercise of our supervisory authority to articulate procedural rules or guidance for trial courts prospectively is not subject to this stringent

standard. Although the defendant asks this court to use its supervisory authority to both overturn his conviction and to abolish consciousness of guilt instructions in future cases, the two questions present distinct inquiries for this court.

As the majority correctly explains, our cases invoking our supervisory authority to articulate procedures and rules that guide trial courts in the administration of justice fall into two categories. In the first category are those cases in which we "articulate a procedural rule as a matter of policy . . . without reversing convictions or portions thereof." (Internal quotation marks omitted.) *State* v. *Carrion*, 313 Conn. 823, 850, 100 A.3d 361 (2014). "In the second category are cases [in which] we [exercise] our supervisory powers to . . . remedy a perceived injustice with respect to a preserved or unpreserved claim on appeal." (Internal quotation marks omitted.) Id. Though our earlier cases have not always clearly articulated this distinction, in recent years this court has made an effort to differentiate and clarify these categories and the standards that govern each. See, e.g., *State* v. *Elson*, 311 Conn. 726, 768–71 n.30, 91 A.3d 862 (2014); *State* v. *Diaz*, 302 Conn. 93, 106–107 n.11, 25 A.3d 594 (2011); see also *State* v. *Carrion*, supra, 850.

In *State* v. *Carrion*, supra, 313 Conn. 851, we explained that, for purposes of the second category of cases, a defendant must establish that the use of our supervisory authority is "truly necessary" to justify the "'extraordinary remedy'" of reversing a conviction under our supervisory powers. (Emphasis omitted.) Id. The first category, on the other hand, involves cases, including the present case, in which this court has determined that the defendant had received a fair trial but that it was nevertheless appropriate to provide direction for trial courts to promote fairness in future cases. "[B]ecause we are not imposing *any* remedy in the case—let alone the extraordinary remedy of a new trial—there is no need for this court to justify the use of extraordinary measures prior to exercising its supervisory authority."

(Emphasis in original.) Id., 852. Instead, "we are free to invoke our supervisory authority prospectively when prudence and good sense so dictate." Id.

Because the majority concludes that the trial court's error was harmless, and thus that the extraordinary remedy of a reversal of the defendant's conviction is unwarranted, I would think that it would be unnecessary to determine whether this court should invoke its supervisory authority to "reverse his conviction and categorically eliminate those instructions." Rather, the present case falls squarely into the first category, in which we exercise our supervisory authority to articulate a procedural rule without disturbing a conviction while requiring only that "prudence and good sense" dictate the elimination of the consciousness of guilt instruction, *or* preserving it, as the majority does today, in a limited form. *State* v. *Carrion*, supra, 313 Conn. 852.

This court frequently invokes its supervisory authority to prophylactically direct trial courts to provide, eliminate, or modify a particular jury instruction when we have determined that the instruction at issue, even when viewed in isolation, presents a risk of misleading a future jury or otherwise undermines principles of fairness.[1] In fact, modifications to jury instructions,

---

[1]See, e.g., *State* v. *Carrion*, supra, 313 Conn. 847–49 (In the exercise of its supervisory authority, this court directed trial courts to refrain from instructing juries that "[t]he state as well does not want the conviction of an innocent person. The state is as much concerned in having an innocent person acquitted as in having a guilty person convicted" because, although the charge was intended to aid defendants by highlighting "that the presumption of innocence and the state's heavy burden of proof are designed to ensure that only guilty persons are convicted," it "possibly might be misunderstood to undermine these principles." (Emphasis omitted.)); *State* v. *Medrano*, 308 Conn. 604, 631, 65 A.3d 503 (2013) (directing trial courts to refrain from instructing jurors that they may consider defendant's interest in outcome of case when defendant testifies and to rely instead on courts' general credibility instructions); *State* v. *Ledbetter*, 275 Conn. 534, 579, 881 A.2d 290 (2005) (requiring jury instruction regarding risks of misidentification inherent in eyewitness identification evidence) (overruled in part on other grounds by *State* v. *Harris*, 330 Conn. 91, 191 A.3d 119 (2018)), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006); *State* v. *O'Neil*, 261

along with judicially crafted and mandated canvasses of parties,[2] constitute the most often employed uses of our supervisory authority. Though we recognize that this court adopts prospective procedural rules to address only serious matters that serve to protect the integrity and fairness of the judicial system as a whole; see, e.g., *In re Daniel N.*, 323 Conn. 640, 645–46, 150 A.3d 657 (2016); our case law demonstrates that considerations favoring the use of our supervisory authority are at their zenith when we decide to craft, modify, or abolish a particular jury instruction to eliminate the risk that a future jury will be misled.

To state the obvious, I have not convinced a majority of the court today that prudence and good sense call for categorically eliminating consciousness of guilt instructions in Connecticut courts. However, to do so would only require this court to determine, as other courts have,

Conn. 49, 74–76, 801 A.2d 730 (2002) (revising "Chip Smith" charge and directing use of specific version of that charge in future cases); *State* v. *Aponte*, 259 Conn. 512, 522, 790 A.2d 457 (2002) (prohibiting future use of jury instruction that "one who uses a deadly weapon on the vital part of another 'will be deemed to have intended' the probable result of that act and that from such a circumstance the intent to kill properly may be inferred"); *State* v. *Griffin*, 253 Conn. 195, 209–10, 749 A.2d 1192 (2000) (prohibiting future use of " 'two-inference' " jury instruction); *State* v. *Devalle*, 250 Conn. 466, 475–76, 736 A.2d 125 (1999) (prohibiting jury instruction stating that reasonable doubt is not doubt suggested by " 'ingenuity of counsel'"); *State* v. *Schiappa*, 248 Conn. 132, 168, 175, 728 A.2d 466 (prohibiting jury instruction that requirement of proof beyond reasonable doubt is rule designed " 'to protect the innocent and not the guilty' "), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999).

[2] See, e.g., *State* v. *Connor*, 292 Conn. 483, 518–19, 973 A.2d 627 (2009) (requiring trial courts to canvass defendants who are found competent to stand trial to also assess if they are competent to conduct trial proceedings without counsel); *State* v. *Gore*, 288 Conn. 770, 778, 955 A.2d 1 (2008) (requiring, absent written waiver, canvass of defendant to ensure personal waiver of fundamental right to jury trial is made knowingly, intelligently, and voluntarily); *Duperry* v. *Solnit*, 261 Conn. 309, 329, 803 A.2d 287 (2002) (requiring canvass of defendant to ensure plea of not guilty by reason of mental disease or defect is voluntary and made with full understanding of consequences, and state also agrees with defendant's claim of not guilty by reason of mental disease or defect).

that sound judicial policy justifies the exercise of our supervisory authority to eliminate the instruction—the same justification required for the majority to conclude that it is "appropriate to invoke our supervisory authority to clarify the proper use of consciousness of guilt instructions and to identify certain features that such instructions should and should not include" when given. Part III B of the majority opinion. In other words, the exercise of supervisory authority to prospectively eliminate a jury instruction is no more extensive an exercise of judicial power and requires no greater justification than prospectively modifying a jury instruction under our supervisory authority.

B

Similarly, principles of stare decisis do not prevent this court from prohibiting the future use of consciousness of guilt instructions any more than they prevent this court from departing from our precedent and *limiting* the instances in which the instruction should properly be given, as the majority has done today. Though this court has acknowledged the importance of stare decisis to the stability and continuity of our jurisprudence, we have also recognized that the principles of stare decisis are not "an insurmountable barrier to a court's reconsideration of its prior precedent. . . . [T]he value of adhering to [past] precedent is not an end in and of itself . . . ." (Internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 520, 949 A.2d 1092 (2008). Rather, "[c]onsistency must also serve a justice related end." (Internal quotation marks omitted.) Id.

Although we should never capriciously depart from precedent, when this court has determined, as the majority has today, that an existing jury instruction is ill-advised, potentially misleading, or has outlived its usefulness, stare decisis has not inhibited this court from modifying or eliminating that instruction. See, e.g., *State* v. *Carrion*, supra, 313 Conn. 847–49; *State* v. *Aponte*, 259 Conn. 512, 522, 790 A.2d 457 (2002); *State* v. *Schiappa*, 248 Conn. 132, 168, 175, 728 A.2d 466, cert.

denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). This is true even when those instructions have survived decades of common use and failed challenges; see, e.g., *State* v. *Medrano*, 308 Conn. 604, 629–31, 65 A.3d 503 (2013) (discontinuing use of instruction regarding defendant's interest in outcome of case after decades of rejecting challenges to such variously worded instructions); and when we abolish both the use of a jury instruction and abrogate the underlying evidentiary rule itself. See *State* v. *Malave*, 250 Conn. 722, 738–39, 737 A.2d 442 (1999) (mindful of importance of stare decisis but nonetheless abandoning missing witness evidentiary rule and instruction in criminal cases), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). Considerations in favor of stare decisis are less prohibitive when the issue is one of judicial policy, including how our trial courts instruct juries. See, e.g., *Payne* v. *Tennessee*, 501 U.S. 808, 828, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991) (considerations in favor of stare decisis are at their nadir in cases involving procedural and evidentiary rules).

The majority contends that the defendant has not demonstrated "compelling reasons" it believes are necessary under the stare decisis doctrine to justify departing from precedent and has not advanced new arguments that this court has not previously rejected. Part III A of the majority opinion. However, the majority apparently has found the defendant's arguments at least somewhat more persuasive today than this court has in the past given that it *has* decided to narrow the circumstances in which a trial court should provide the consciousness of guilt instruction and to modify certain features of the charge, departing from precedent due, in part, to the repeated and varied challenges to these instructions that have come before this court.

Because modifying or creating new procedural rules necessarily requires a departure from precedent, we do not typically weigh the principles of stare decisis when deciding to articulate prospective guidance regarding

judicial policy under our supervisory authority. It is precisely because we recognize that a jury instruction we have previously endorsed poses a risk that a future jury will be misled that we decide to craft, modify or abolish a jury instruction.

The majority's approach overrules decades of precedent (albeit not by name) just as eliminating the instruction altogether would. The majority institutes new criteria requiring the state, upon objection by the defense to the state's request for the instruction, to provide the trial court with a justification for why the instruction is necessary in a particular case. Our precedents have, of course, found no error when the state has not provided a justification that would meet the guidelines the majority announces today. Similarly, our precedents have never taken issue with trial courts' providing juries with the Judicial Branch's model consciousness of guilt instruction; see footnote 14 of the majority opinion; which suggests only that the court recite the state's position as to the consciousness of guilt evidence, or with a written instruction with the label or heading "Consciousness of Guilt," which the majority cautions against today. It is impossible, then, to come away from the majority opinion believing that many of our earlier cases are left undisturbed. See, e.g., *State* v. *Cooper*, 353 Conn. 510, 561, 343 A.3d 465 (2025) (instruction provided over defense counsel's objection without special justification by state recited only state's evidence, referenced " 'guilty conscience' " and included phrase, " 'flight when unexplained' "); *State* v. *Coward*, 292 Conn. 296, 314, 972 A.2d 691 (2009) (instruction referred only to state's characterization of evidence); *State* v. *Luster*, 279 Conn. 414, 422–23 n.3, 902 A.2d 636 (2006) (instruction included reference to " 'guilty knowledge' " and " '[f]light, when unexplained' "); *State* v. *Figueroa*, 257 Conn. 192, 196 n.8, 777 A.2d 587 (2001) (instruction included reference to " 'guilty consciousness' " and recited only state's evidence); *State* v. *Hines*, 243 Conn. 796, 811 n.10, 812 and n.12, 709 A.2d 522 (1998) (court declined defense counsel's request to include innocent explanations for

flight in consciousness of guilt instruction and included phrase, " '[f]light, when unexplained' ").

Further, as the majority admits, "an examination of our precedent . . . reveal[s] that our cases involving consciousness of guilt have not clearly distinguished between the admissibility of consciousness of guilt evidence and the separate question of whether a trial court should instruct the jury on that evidence." Part III B of the majority opinion. It is self-contradictory, in my view, for the majority in the same breath to assert that stare decisis should protect any precedent that remains untouched by its own reform. It does not follow that the principles of stare decisis do not prevent this court from amending the instruction but do require that this court hold onto fragments of the instruction simply because we have, in the past, declined to abolish or amend the instruction at all.

C

When addressing the propriety of consciousness of guilt instructions in future cases, this court should focus solely on whether the instruction, in any form, serves a justice related end, an issue squarely presented and thoroughly briefed.[3] I am not convinced that it does, even when provided in the limited circumstances the majority has outlined today. Rather, I believe the time has come to abandon consciousness of guilt instructions entirely in Connecticut courts. The revisions the majority has promulgated today, though certainly a vast improvement, in my view highlight the inherent deficiencies of the instruction and illustrate that the instruction has outlived its usefulness, if ever it had any. Alternatively, I would not adopt the majority's burden shifting framework and instead would limit the use of the instruction

---

[3] As the majority notes, we transferred this appeal from the Appellate Court to this court upon the defendant's motion. The defendant predicated his motion on the fact that he planned to ask this court (because he could not ask the Appellate Court) to "revisit the propriety of the [consciousness of guilt] instruction" and "to abandon [it] as an exercise of its supervisory authority . . . ." (Citation omitted.)

only to cases in which the defense has requested it or has no objection to the state's request, and the court provides a balanced and neutral instruction that recites both parties' characterization of the evidence at issue.

I would discontinue the use of consciousness of guilt instructions for many of the policy reasons articulated by the defendant and the amici, and highlighted by the majority. Juries are likely to give undue weight to a defendant's actions when a neutral judge emphasizes the culpability inference derived from the evidence and instructs them that the defendant's conduct may be motivated by a guilty conscience. See, e.g., *State* v. *Malave*, supra, 250 Conn. 735 ("[t]here is a difference between what the jury might infer on its own, which can never be completely controlled, and what the jury might think when the absence of certain evidence is highlighted by . . . the judge's instructions" (internal quotation marks omitted)). Courts have long recognized the need to abandon the practice of trial courts summarizing or otherwise marshalling evidence absent special circumstances. See, e.g., *United States* v. *Mundy*, 539 F.3d 154, 158 (2d Cir. 2008) (describing flight instruction as "vestige of the late nineteenth and early twentieth centuries, when it was common practice for judges to summarize and comment upon the evidence generally" that has "[f]or good reason . . . fallen into widespread disfavor" because "[j]udges cannot marshal the evidence without exercising their own judgment" and invading province of jury). Trial courts have great influence over juries, and the risk that their endorsement of one of several possible inferences that could reasonably be drawn from the defendant's conduct more explicitly than others carries a great risk of undue harm to defendants. See id.; see also *State* v. *Hernandez*, 218 Conn. 458, 462, 590 A.2d 112 (1991) ("[t]he influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling" (internal quotation marks omitted)).

I agree with the defendant that the competing inferences that could be drawn from the state's consciousness of guilt evidence are more appropriately left to the arguments of the parties without the influence of the neutral trial court. See, e.g., *United States* v. *Robinson*, 475 F.2d 376, 384 (D.C. Cir. 1973) ("[t]he interest of justice is perhaps best served if this matter is reserved for counsel's argument, with little if any comment by the bench"). The defendant, the majority, and the state agree that a court has no special expertise in the interpretation of human behavior, and jurors are fully capable of evaluating the evidence and arguments made by counsel and what inferences to draw from them. See *United States* v. *Mundy*, supra, 539 F.3d 157. To the extent juries are aided by instruction from the court on assessing circumstantial evidence and witness credibility, our general credibility and circumstantial evidence instructions provide sufficient guidance. Given the limited usefulness of a specific jury instruction on consciousness of guilt evidence, the risk that the instruction will unduly elevate the inference of consciousness of guilt will almost always outweigh the benefit.

Although the majority's modifications to the consciousness of guilt instruction help neutralize risks, ultimately, the majority's guidance highlights the fundamental expendability of the instruction itself. The majority cautions that trial courts should instruct on consciousness of guilt only after balancing the need for the instruction against the potential risks associated with providing it. Therefore, before providing the instruction a trial court must determine that a tailored instruction will aid the jury beyond what counsel's arguments and the general evidentiary instructions provide. However, as the majority notes, at oral argument counsel for the state struggled to articulate how the charge provided additional guidance to the jury.[4] In fact, in its brief, the state, with admirable candor and with an eye toward

---

[4]The majority has done no better, providing no examples of how the state might "demonstrate that a specific consciousness of guilt instruction is necessary . . . ." Part III B of the majority opinion.

practicality, suggests that, should this court adopt the limitations on the provision of the consciousness of guilt charge that the defendant urges, namely, that the charge be given only when the defense does not object, the defendant has not offered an innocent explanation for his conduct, and the evidence has considerable probative value—then this court "might as well simply abolish the charge entirely." I see no greater value in keeping the charge under the reformed conditions that the majority today announces. An instruction on consciousness of guilt, in my view, is at best duplicative of the court's general instructions on witness credibility and circumstantial evidence and, at worst, unfairly prejudicial to the defendant because it emphasizes an inference of guilt over other possible inferences.

The state argues that this logic calls into question the validity of other instructions that a jury is perhaps fully capable of going without, and it is possible that this is true. However, I am reluctant to conclude that we should not abandon an instruction that is of minimal usefulness to the jury, that the state concedes is not necessary, and that carries a high risk of harm, simply because similar scrutiny of other jury instructions in cases not before us might warrant the same conclusion if challenged in the future. Further, I agree with the defendant that this instruction is perhaps more risky than other *noncritical* jury instructions because it strikes closest to the ultimate issue in any criminal case—the defendant's guilt.

Because neither the state nor the majority can articulate precisely why or when the jury needs guidance from the court on consciousness of guilt evidence beyond the court's general instructions and the arguments of the parties, I conclude that the instruction is not worth keeping. Courts in jurisdictions across the country have cautioned against, discouraged, or prohibited consciousness of guilt instructions in some circumstances. See, e.g., *United States* v. *Mundy*, supra, 539 F.3d 157; *United States* v. *Robinson*, supra, 475 F.2d 384; *Robbins* v. *People*, 142 Colo. 254, 260, 350 P.2d 818 (1960)

(consciousness of guilt instructions on flight are "'rarely advisable'"); *Fenelon* v. *State*, 594 So. 2d 292, 294–95 (Fla. 1992) (comment on flight evidence should be reserved for counsel rather than court); *Renner* v. *State*, 260 Ga. 515, 518, 397 S.E.2d 683 (1990) (error for trial court in future criminal cases to charge jury on flight); *Dill* v. *State*, 741 N.E.2d 1230, 1232 (Ind. 2001) (error to provide flight instruction due to its great potential to mislead jury); *State* v. *Marsh*, 392 N.W.2d 132, 133 (Iowa 1986) (trial court should ordinarily not draw attention to specific evidence); *State* v. *Cathey*, 241 Kan. 715, 731, 741 P.2d 738 (1987) ("It is clearly erroneous for a judge to instruct the jury on a defendant's consciousness of guilt by flight, concealment, fabrication of evidence, or the giving of false information. Such an instruction singles out and particularly emphasizes the weight to be given to that evidence by the jury."); *State* v. *Grant*, 275 S.C. 404, 408, 272 S.E.2d 169 (1980) (flight charge places undue emphasis on circumstantial evidence and should not be used); *State* v. *Menard*, 424 N.W.2d 382, 384 (S.D. 1988) (model jury instruction on consciousness of guilt regarding flight or concealment "should be used sparingly"); *Hawkins* v. *State*, Docket No. 02-15-00338-CR, 2016 WL 4474351, *5 (Tex. Crim. App. August 25, 2016, pet. ref'd) (jury instruction on flight improper because it comments on weight of evidence); *State* v. *Jefferson*, 11 Wn. App. 566, 571, 524 P.2d 248 (1974) (instructions that place emphasis on specific circumstantial evidence should be discarded); *Hadden* v. *State*, 42 P.3d 495, 508 (Wyo.) (giving of flight instruction to jury in future cases will constitute reversible error), cert. denied, 537 U.S. 868, 123 S. Ct. 272, 154 L. Ed. 2d 114 (2002).[5] I see little virtue in

[5]Courts most often provide consciousness of guilt instructions regarding evidence of a defendant's having fled to avoid arrest or prosecution. Many of the out-of-state cases I have discussed have abolished the instruction only in the context in which it arose—flight evidence. However, I can perceive no relevant distinction between the policies that justify abolishing flight instructions and those that justify abolishing instructions regarding other consciousness of guilt evidence such as false statements or the concealment of evidence.

delaying the elimination of such a widely criticized and marginally beneficial instruction.

Alternatively, I would preserve the instruction only in cases in which the defense requests the instruction or has no objection to the state's request that it be given. The majority preserves the instruction, even over an objection by the defense, if the state can explain why the instruction is necessary; "that is, why the jury cannot, despite the court's general instructions on circumstantial evidence and reasonable inferences, be expected to evaluate the consciousness of guilt evidence and draw the appropriate inferences without the court's express guidance." Part III B of the majority opinion. Further, the majority contends, "when the prosecutor cannot demonstrate that a specific consciousness of guilt instruction is necessary, the added instruction may do more to distort the jury's deliberative process than to assist it and should not be given." Id. Yet, the majority does not provide an example of what this hypothetical justification would entail, and the state's concession at oral argument before this court that the instruction is not "critical" and that the jury does not need the instruction to capably assess the evidence suggests that this is an impossible task.

Some might characterize my position as more "absolutist" or a greater exercise of judicial policymaking than the majority exercises today, but I do not see it that way. I respect that the currently constituted court has tacitly concluded that prudence and good sense dictate amending the instruction and implementing a new burden shifting test for the parties and trial courts to employ. My approach, on the other hand, would leave the parties to argue to the jury the inferences to be drawn from consciousness of guilt evidence without involving the trial court. In my view, this is a more judicially modest approach.

Though I hope that, after today's opinion, the consciousness of guilt instruction is used more sparingly, and is neutral and harmless when given, I believe that the majority's commitment to maintaining an instruction

with such limited value and high risk places an unnecessary burden on trial judges and serves to generate avoidable issues for appeal. If the instruction is ever given over an objection by the defense, this court or the Appellate Court will be in the always challenging position of trying to determine if the instruction was harmful, should we find that the instruction was given in error, until we inevitably abolish the instruction entirely. I turn to the question of harm next.

## II

I agree with the majority that, even under binding law at the time of the defendant's trial, the trial court abused its discretion by providing a consciousness of guilt instruction that unduly magnified the probative value of the consciousness of guilt evidence and blatantly favored the state's characterization of the evidence. However, in my view, this case presents a closer call on the issue of harm than the majority's brief treatment of the issue suggests, and I cannot agree that the trial court's error did not deprive the defendant of a fair trial. In particular, I do not agree that the erroneous instruction was rendered harmless in part by mitigating language in the offending (and now nearly abolished) instruction itself, or by other instructions the court provided to the jury. Nor do I agree that the split verdict that the jury returned in this case supports the conclusion that the instructional error was harmless. Finally, though I agree that the state presented sufficient evidence to support the charges on which the jury found the defendant guilty, I am not convinced that the evidence was strong enough to render the court's error in this case harmless.

First, I do not agree that the court's general instructions on circumstantial evidence and witness credibility mitigated any harm caused by the court's error. By providing the jury with general circumstantial evidence and credibility instructions, while additionally providing a specific separate instruction on consciousness of guilt, highlighting and adopting only the state's interpretation of the evidence, the trial court exacerbated rather

than mitigated the impact of the instruction. Further, if the erroneous consciousness of guilt instruction that the court gave the jury in the present case, which overtly sided with the state, can be rendered harmless by other general jury instructions, it is difficult to imagine when the instruction, if given in error, would ever be harmful. This simultaneously suggests that the general jury instructions completely overcome any remaining utility of the consciousness of guilt instruction and undermine the majority's justification for amending and eliminating the instruction in so many contexts to minimize prejudice to the defendant.

I also do not accept that features of the court's jury charge mitigated the impact of its error in providing the instruction and endorsing the state's characterization of the evidence. The majority reasons that the consciousness of guilt instruction provided to the jury contained an "important limiting caveat"; part II of the majority opinion; by explaining to the jury that it could draw an inference of consciousness of guilt only if it first found that the evidence proved the relevant conduct and that the conduct was influenced by the criminal act and not any other reason. It is illogical, in my view, to conclude that the language of the model consciousness of guilt instruction itself renders the error harmless. Providing the model consciousness of guilt instruction language describing more precisely when it is appropriate to infer guilt from any particular evidence in no way mitigates the court's error when the court summarized only the state's evidence in the jury charge and placed its imprimatur on the state's pejorative characterization of the evidence that the defendant had "chang[ed] his story . . . ."

I am also not convinced that the fact that the jury found the defendant not guilty on multiple counts should increase our confidence that the erroneous instruction was harmless under the circumstances of this case. A split verdict might, in some cases, indicate that which the law already assumes: that the jury did not, as the majority states, "mechanically [translate] the court's

characterization of the evidence into a blanket finding of guilt"; part II of the majority opinion; see, e.g., *State* v. *Ancona*, 256 Conn. 214, 219, 772 A.2d 571 (2001) ("'[u]nless there is evidence to the contrary, the jury is presumed to follow the court's instructions'"). It does not necessarily follow, however, that the instruction in this case did not mislead the jury, nor does the majority provide any analysis of the evidence and charges to justify drawing that conclusion in this case. I cannot conclude that, because the jury did not find, beyond a reasonable doubt, each element of all of the charged crimes, the jury was therefore not influenced by the court's erroneous instruction. See *State* v. *Iban C.*, 275 Conn. 624, 644–45, 881 A.2d 1005 (2005) (rejecting state's claim that acquittal on more serious charge of first degree sexual assault suggested that jury, which found defendant guilty on lesser charges, was not influenced by improper testimony). The majority's conclusion suggests that the jury's split verdict increases our confidence that the erroneous instruction was harmless because the jury assessed the victim's credibility; however, it is the *defendant's* credibility that an unbalanced consciousness of guilt instruction impacts. It is just as plausible in this case that the court's putting its imprimatur on the state's theory that the defendant "change[d] his story," and its corresponding assumption that this reflected a guilty conscience, was what tipped the balance in the state's favor on the least serious of the crimes charged, convincing the jury to find the defendant guilty only of two third degree offenses, even though it could not find that the state had sustained its burden of proving facts sufficient to establish elements of crimes of significantly greater gravity. See *State* v. *Maguire*, 310 Conn. 535, 562–63 n.13, 78 A.3d 828 (2013) (rejecting state's argument that defendant's acquittal on two more serious sexual assault charges meant jury was not unduly influenced by prosecutorial impropriety).

In the present case, the state's amended information contained six counts. First, the state alleged that the defendant had violated General Statutes § 53a-70 (a)

(1), sexual assault in the first degree. Specifically, the state alleged that the defendant had digitally penetrated the victim's vagina by use of force, causing her to fear physical injury. The state presented the victim's testimony and the testimony of an emergency medicine physician, William Begg, who examined the victim at the hospital. The state also entered into evidence photos of the victim's injuries and her statement to the police, as well as evidence that the defendant's DNA was found on the victim's pants.

Second, the state charged the defendant with sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), alleging that the defendant had compelled the victim to submit to sexual contact with one of the victim's breasts by use of force. The state relied on the victim's testimony that the defendant had pushed her to the floor and held her down, lifted her shirt and bra, licked and touched her breasts, and squeezed her vagina. The state also relied on evidence of the defendant's DNA on the inside of the victim's pants, as well as Begg's testimony about bruising present on the victim's shoulder and chest four days after the incident.

Third, the state alleged that the defendant had unlawfully restrained the victim under circumstances that exposed her to a substantial risk of physical injury in violation of General Statutes § 53a-95 (a). Again, the state presented the victim's testimony that the defendant had held her down as she begged him to let her go, as well as Begg's testimony regarding her injuries, in support of this charge.

Fourth, the state charged the defendant with assault in the third degree of an elderly person in violation of General Statutes § 53a-61a (a) (1), alleging that he had intentionally caused physical injury to the victim, who was at least sixty years old. The state presented the victim's testimony that the defendant had pushed her to the ground, pushed her onto a bed by her shoulders, and grabbed her arms, as well as Begg's testimony regarding her injuries.

Fifth, the state charged the defendant with strangulation in the second degree in violation of General Statutes § 53a-64bb (a), alleging that he had restrained the victim by her neck or throat, or obstructed her nose or mouth with the intent to impede her ability to breathe. The state presented the victim's testimony that the defendant had placed his hand on her neck and covered her nose and mouth, and that she felt she could not breathe. The state also presented the testimony and reports of Begg, who had examined the victim and found what he referred to as "questionable bruising" on the victim's neck.

Sixth, and finally, the state charged the defendant with threatening in the second degree in violation of General Statutes § 53a-62 (a) (1), alleging that the defendant, by physical threat, had intentionally placed or attempted to place the victim in fear of imminent serious physical injury. The state relied on the victim's testimony that the defendant had raised his hand as if to hit her, as well as the defendant's own testimony that he had raised his hand to strike her and that the victim blinked in response and appeared to be afraid.

The defendant testified in his own defense, stating that he was at the victim's home at her request to inspect her windows, a request he had previously declined. He stated that, shortly after he arrived, the victim indicated that she was going to shower while he inspected the windows and that she emerged from the shower, having changed out of her clothes and into a black lingerie style nightgown. He denied assaulting the victim and testified that the victim had initiated contact with him, hugging and grabbing him from behind while he attempted to leave the victim's home. The defendant testified that he was surprised and angered by her advances and pushed her away forcefully, insulted her, and put his hand up to strike her. He stated that he then softened his tone of voice, promised he would not tell anyone about what had occurred, and left.

The consciousness of guilt evidence that the state presented was that the "defendant initially told Jill

[Swearingen] and Alex Ache [employees of the company where both the defendant and the victim worked] that he never went to [the victim's] residence on July 9, 2018," though he later admitted that he did. The defendant never denied his presence at the victim's home to the police. The state argued that the defendant's initial inconsistencies with the company's employees was evidence of the defendant's guilt. At trial, the defendant offered his own explanation, consistent with what he had told the police during his interview, that he had promised the victim he would not tell anyone about what had happened between them. He explained further that he ultimately told the police about the details of what had happened during his interview with them days later "[b]ecause I'm in a lawful place, I have to [tell] the truth, and I told everything the truth."

The jury found the defendant guilty of sexual assault in the third degree and assault of an elderly person in the third degree. However, the jury found him not guilty of the more serious charge of sexual assault in the first degree, as well as unlawful restraint in the first degree, strangulation in the second degree, and threatening in the second degree. We can never be certain why a jury finds a defendant guilty, beyond a reasonable doubt, on any particular charge. However, in assessing whether the jury was misled by the trial court's erroneous and imbalanced instruction—an instruction that will be given rarely, if ever, in future cases due to the high risk that it will mislead juries—it is fair to assume that the jury did not credit all of the victim's testimony. In particular, there is doubt, objectively, that the jury credited the victim's testimony that the defendant had digitally penetrated her or strangled her, even though the jury found that the evidence supported the allegations that the defendant had some sort of forceful—including sexual—contact with the victim and caused her to sustain physical injury.

Ultimately, then, I conclude that, whether the court's instructional error was harmless in this case can be resolved only by considering the strength of the state's

evidence relating to the charges on which the jury found the defendant guilty, to determine if it is reasonably probable that the jury was misled by the court's error in giving the consciousness of guilt instruction—both because the evidence did not support the instruction and because it was so blatantly unbalanced. See *State* v. *Edwards*, 334 Conn. 688, 717, 224 A.3d 504 (2020) (nonconstitutional instructional errors are harmless if it is not reasonably probable that jury was misled). The majority's own recounting of the instruction and the evidence that supported it persuades me that the language of the trial court's consciousness of guilt instruction[6] was harmful to the defendant and that this is something about which we do not have to speculate. As the majority indicates, the factual record on the consciousness of guilt evidence at issue "was far less definitive" than what the trial court portrayed to the jury. Part II of the majority opinion. The trial court informed the jury that the defendant had "change[d] his story" after first denying to Swearingen and Ache that he had gone to the victim's residence on the day in question. As the majority indicates, however, Ache's testimony left "uncertain both whether the defendant actually made any inconsistent statement and the circumstances in which any such statement was made." Id.

---

[6]The court instructed the jury as follows: "Consciousness of guilt. In any criminal trial, it is permissible for the state to show that conduct or statements made by a defendant after the time of the alleged offense, may have been influenced by the criminal act; that is, the conduct or statements show a consciousness of guilt. For example, a person's false statements as to his or her whereabouts at the time of the offense may tend to show a consciousness of guilt.

"In this case, the state presented evidence that the defendant initially told [Swearingen and Ache] that he never went to [the victim's] residence on July 9, 2018, only to change his story a short time later by admitting that he had gone to [the victim's] residence on that day. Such a statement does not, however, raise a presumption of guilt.

"If you find the evidence proved, and also find that the acts were influenced by the criminal act and not by any other reason, you may, but are not required to, infer from this evidence that the defendant was acting from a guilty [conscience]. It is up to you as judges of the facts to decide whether the defendant's statements, if proved, reflect a consciousness of guilt and to consider such in your deliberations in conformity with these instructions."

Further, the majority notes that, unlike in situations involving a suspect's untruthful denials to law enforcement, "the inferential link to consciousness of guilt remains attenuated" in that the evidence of the defendant's supposed consciousness of guilt came "not so much [from] a false statement as [from] inconsistent statements made in the course of a single interview conducted by the defendant's employer as part of its internal investigation, under circumstances that, as Ache's testimony suggests, may have been shaped by 'work [the defendant] was doing with his attorney . . . .'" Id. Yet, the trial court characterized the defendant as having "change[d] his story," which the majority acknowledges "carries a distinctly pejorative connotation, suggesting not merely inconsistency but a lack of credibility or an attempt to mislead . . . [that] risked signaling to the jury that the court endorsed the view that the defendant had made a false statement indicative of guilt, rather than leaving the jury free to assess the evidence and competing inferences on its own." Part II of the majority opinion. By marshaling evidence only in support of the state's case and endorsing the state's pejorative characterization of the defendant's statements, the court's instruction overstated the evidence in the state's favor when it was the jury's sole province to evaluate that evidence.

Thus, the majority has concluded (and I agree) that, considering "the limited probative value of the underlying testimony and the inference in the instruction that favored the state's interpretation," the trial court abused its discretion by giving the instruction. Id. The harm caused by the particular unbalanced instruction the court gave therefore exceeded the risk of harm inherent in any consciousness of guilt instruction, which exists "[a]ny time a trial court singles out a particular piece of evidence in its instructions or identifies a specific inference that may be drawn from that evidence," and today leads the majority to almost (but not quite) eliminate the instruction in all but a small fraction of cases. Part III B of the majority opinion,

A defendant establishes harm as a result of a nonconstitutional error by demonstrating that "it is reasonably probable that the jury [was] misled . . . ." (Internal quotation marks omitted.) *State* v. *Adam P.*, 351 Conn. 213, 230, 330 A.3d 73 (2025). Specifically, "the defendant bears the burden of demonstrating that the [impropriety] was harmful. . . . [A] nonconstitutional [impropriety] is harmless when an appellate court has a fair assurance that the [impropriety] did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Boyd*, 295 Conn. 707, 743, 992 A.2d 1071 (2010), cert. denied, 562 U.S. 1224, 131 S. Ct. 1474, 179 L. Ed. 2d 314 (2011). Given the trial court's endorsement of the state's interpretation of the defendant's behavior over the explanations the defendant provided when testifying in his defense, and the jury's finding nonetheless that the defendant was not guilty of four more serious charges, I cannot say that I have a "fair assurance" on this evidentiary record that the court's error in giving the instruction, and the prejudice that flowed from it, as previously detailed, did not affect the jury's verdict.

Although I agree that the state presented *sufficient* evidence to support the victim's version of events, and therefore to support the charges of sexual assault in the third degree and assault of an elderly person in the third degree, the defendant provided his explanation for the physical evidence. The defendant did not deny having physical contact with the victim, which could account for the DNA evidence the state presented, as well as the evidence of the victim's injuries. The defendant testified that the victim initiated physical contact with him, hugging and grabbing him from behind while he attempted to leave the victim's home, and that he forcefully grabbed her arms and pushed her away. The case still largely turned on the testimonial credibility of the victim and the defendant, notwithstanding the physical evidence, which was not implausibly consistent with the defendant's account. Given the defendant's acquittal on four of the charged offenses, it is reasonable to conclude

that the jury did not credit the victim's account of the assault in its entirety.

In addition to the victim's testimony, the state presented the jury with photos of bruising on the victim that were taken at the hospital days after the assault. The state also offered the testimony of Begg, who observed bruising on the victim's left breast, upper arm, and right knee that he described as consistent with injuries that had occurred days earlier. Therefore, I agree that the victim's and Begg's testimony, along with photos, sufficiently supported the victim's version of events as to the charges of sexual assault in the third degree and assault of an elderly person in the third degree. This does not necessarily mean, however, that the evidence was sufficiently strong that it rendered the court's error harmless in this particular case. Begg could not provide similarly definitive testimony regarding injuries to the victim's neck and vagina that would have supported the state's charge of sexual assault in the first degree and strangulation in the second degree, and it is reasonable to conclude that the not guilty verdict on those charges reflects the jury's inability to credit the victim's testimony concerning those charges. Further, the defendant's testimony about how he rejected her advances, pushed her away forcibly, and raised his hand as if to slap the victim was consistent not only with her injuries but also with his statements to the police five days after the incident and the victim's testimony that the defendant had raised his hand to hit her.

All members of this court agree that the trial court improperly endorsed the state's evidence, even though the defendant provided his own version of events during his testimony. I cannot say with sufficient confidence that the court's consciousness of guilt instruction did not improperly impede the jury's ability to independently assess the credibility of the defendant's testimony against that of the victim such that the instruction did not influence the jury's verdict.

I therefore respectfully concur in part and dissent in part.